**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THE DORIS W. RAY IRREVOCABLE**
**TRUST,** *and* **DORIS W. RAY,**

                              **Petitioners,**

    vs.                                              **6:17-cv-763**
                                                      **(MAD/TWD)**

**MICHAEL RAY,**

                              **Respondent.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**MACKENZIE HUGHES LLP**             **JOHN J. SIEROTNIK, ESQ.**
Mackenzie Hughes Tower
440 South Warren Street - Suite 400
Syracuse, New York 13202-4967
Attorney for Petitioners

**MICHAEL RAY**
505 N. Kings Highway, #100
Post Office Box 100
Myrtle Beach, South Carolina 29578-0100
Respondent, *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On July 11, 2017, Petitioners filed a verified petition to recover possession of real property in Town Court in Herkimer, New York. *See* Dkt. No. 2 at 3. On July 13, 2017, Respondent removed the Petition to the Northern District of New York pursuant to 28 U.S.C. § 1332. *See* Dkt. No. 1 at 1.

Currently before the Court are Petitioners' motion to remand, Dkt. No. 17, Respondent's motion to stay and supplemental motion to stay, Dkt. Nos. 24 and 33, and Respondent's request

for sanctions, Dkt. No. 28. For the following reasons, Petitioners' motion is granted and Respondent's motions and request are denied.

## II. BACKGROUND

When her husband passed in 2006, Petitioner Doris W. Ray ("Doris Ray") gained title in fee simple to the house at 200 Carney Avenue in Herkimer, New York (the "Property"). *See* Dkt. No. 17-2 at ¶¶ 3-4. Shortly after, Doris Ray granted herself a life estate in the Property and transferred the remainder to her two sons, Scott Ray and William W. Ray, as joint tenants with a right of survivorship. *See id.* at ¶ 5. On January 4, 2014, Scott Ray passed away. *See id.* at ¶ 6. Shortly after, on May 21, 2014, Doris Ray created The Doris W. Ray Irrevocable Trust (the "Trust") for the purpose of managing her assets for her benefit. *See* Dkt. No. 17-5 at 6; Dkt. No. 17-7 at 1. She appointed William Ray and Respondent *pro se* Michael Ray ("Respondent") as trustees. *See* Dkt. No. 17-5 at 6. The same day, Doris Ray gave up her life estate in the Property and William Ray transferred his title in fee simple into the Trust. *See* Dkt. No. 17-2 at ¶ 8. The Trust granted Respondent a license to occupy the Property along with Doris Ray. *See* Dkt. No. 17-2 at ¶ 11. While it is unclear from the record whether Respondent actually resides in the Property, Respondent's possessions, which he claims are worth in the tens of thousands of dollars, have not been removed. *See id.* at ¶ 16; Dkt. No. 21 at ¶ 3.

In late 2016, the relationship between Doris Ray and Respondent soured. On November 1, 2016, Respondent was removed as a trustee from the Trust. *See* Dkt. No. 17-7 at 1. Soon after, on November 7, 2016, Doris Ray sought a protective order against Respondent in New York State Family Court against Respondent. Dkt. No. 27-1 at 1-2. While the court granted her temporary relief, Doris Ray never served the order on Respondent and it expired after she failed to appear in court to support her request. *See* Dkt. No. 27 at ¶ 10. On June 5, 2017, Petitioners gave

Respondent a ten-day notice that Respondent's license had been terminated and that Respondent was required to vacate the premises. *See* Dkt. No. 17-2 at 13. Respondent did not completely vacate the premises and on July 11, 2017, Petitioners filed a verified petition to recover possession of real property (the "Petition") in the Herkimer Town Court in against Respondent in order to evict him from Doris Ray's home. *See* Dkt. No. 2 at 3.

On July 13, 2017, Respondent removed the Petition to the Northern District of New York pursuant to 28 U.S.C. § 1332. *See* Dkt. No. 1 at 1. Respondent claimed that he was domiciled in South Carolina and submitted a South Carolina driver's license issued in 2009; a South Carolina voter card issued in 2011; a South Carolina vehicle registration dated June 15, 2017; a South Carolina car insurance tag that expires in May 2018; and a South Carolina wallet identification card that expires in 2021 to support this assertion. *See id.* at 17. Respondent claimed that the amount in controversy in this action was "in excess of $75,000.00[,] as it deals with the ownership and or proportional ownership interest in a parcel of real estate currently appraised" at approximately $80,000. *Id.* at 2; *see id.* at 20. On July 20, 2017, Respondent requested six unnamed subpoenas on non-party witnesses by filing six blank subpoena forms. *See* Dkt. No. 9. On July 25, 2017, Magistrate Judge Dancks denied the subpoenas without prejudice in a text order on the grounds that the forms were blank. *See* Dkt. No. 14.

On August 7, 2017, Petitioners filed a motion to remand pursuant to 28 U.S.C. § 1447. *See* Dkt. No. 17 at 1. On September 5, 2017, Respondent requested a 30-day extension to file his response to the motion to remand. *See* Dkt. No. 23. The same day, Respondent filed a motion to stay the motion to remand in order to conduct limited discovery. *See* Dkt. No. 24 at ¶ 2. Respondent claimed that in order "to properly prepare his opposition to the Motion to Remand, he [would] need to subpoena certain documents from the treating physician of Doris Ray, her estate

3

planning attorney, the attorney who handled the estate of Scott K. Ray, and the Herkimer County Department of Social Services." *Id.* at ¶ 4. Petitioners objected to these discovery requests noting that the requested information was irrelevant to the jurisdictional question before the Court. *See* Dkt. No. 27 at ¶¶ 4-7. Petitioners noted that in November 2016, Doris Ray obtained a temporary order of protection against Respondent from the Herkimer County Family Court, although it expired and was never served on Respondent. *See id.* at ¶ 10. Petitioners argued that the need for this protective order was evidence that Respondent's discovery requests were being made in bad faith. *See id.*

On September 11, 2017, Respondent filed a motion to sanction Petitioner's counsel for knowingly submitting false information to the Court. *See* Dkt. No. 28 at ¶¶ 8, 10. Respondent claimed that the order was vacated after Doris Ray failed to appear at a hearing to prosecute the protective order and that it was referenced in an attempt to "puff" Petitioners' position. *See id.* at ¶¶ 6, 8. Petitioners denied that any statements regarding the protective order were false. *See* Dkt. No. 29. Respondent replied stating that characterizing the protective order as having "expired" was a false statement as the order never went into effect. *See* Dkt. No. 30 at 1. On October 6, 2017, Respondent filed a supplemental motion to stay the motion to remand. *See* Dkt. No. 33.

### III. DISCUSSION

**A.      Review of *Pro Se* Submissions**

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights

4

merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### B.     Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction. Under 28 U.S.C. § 1332(a), a federal court has jurisdiction over the subject matter of a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a). "The 'party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.'" *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 296 (E.D.N.Y. 2005) (quoting *Scherer v. The Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 398 (2d Cir. 2003)).

A respondent may remove to federal court "'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 309-10 (2d Cir. 2005) (quoting 28 U.S.C. § 1441(a)). However, once a case has been removed, it must be remanded "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Id.* at 310 (quoting 28 U.S.C. § 1447(c)). Where, as here, jurisdiction is asserted by a respondent in a removal petition, the respondent bears the burden of establishing that removal is proper. *See Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citations omitted). If there are any doubts as to removability, they are resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (citation omitted). Although there is a presumption that the court has jurisdiction when the matter is brought in federal court in the first

instance, a respondent "removing a case to federal court encounters instead the general principle that removal is disfavored and remand favored." *Pollock*, 367 F. Supp. 2d at 296-97 (citation omitted).

### *1. Amount in Controversy*

"The Court resolves whether to remand after removal by referring to the complaint at the time the petition for removal is filed." *In re 17,325 Liters of Liquor*, 918 F. Supp. 51, 54 (N.D.N.Y. 1996) (citing *Rosenberg v. GWV Travel, Inc.*, 480 F. Supp. 95, 96 (S.D.N.Y. 1979)). "[I]f, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938).

> In an action seeking injunctive relief, the Second Circuit has held that
>
> > "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Com'n,* 432 U.S. 333, 347 . . . (1977). . . . "[T]he amount in controversy is calculated from the [petitioner's] standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of New York Auth.,* 457 F.2d 46, 49 (2d Cir.1972) (internal quotations omitted).

*Correspondent Serv. Corp. v. First Equities Corp. of Fl.*, 442 F.3d 767, 769 (2d Cir. 2006).

When the petitioner's desired injunctive relief is eviction, courts determine the amount in controversy based on the potential change in the petitioner's economic position. *See MCC Mortg. LP v. Office Depot, Inc.*, 685 F. Supp. 2d 939, 943-44 (D. Minn. 2010). In assessing this value, courts look to the length of time remaining in the lease and the difference in value between the rent received from the current tenant and the potential rent from a future tenant. *A. Levet Prop. P'ship. v. Bank One, N.A.*, No. 03 Civ. 1373, 2003 WL 21715010, *3 (E.D. La. July 21, 2003).

6

Any additional income that would be earned after the expiration of the lease's term does not count towards the amount in controversy. *Cf. id.*

Here, Respondent has attempted to establish the amount in controversy requirement by asserting that the state court proceeding would resolve a title contest of a property valued in excess of $75,000. However, under New York law, town and village courts are courts of limited jurisdiction that do not have the authority to resolve questions of title. *Porter v. Newton*, 253 N.Y.S. 200, 201 (N.Y. Sup. Ct. 1931). The only issue before the town court was whether Petitioners could evict Respondent, as any attempt to quiet the title would be outside of the town court's jurisdiction. *See id.* Thus, the amount-in-controversy analysis is limited solely to the economic effects of the eviction.

Respondent asserts that he currently stores tens of thousands of dollars worth of his possessions in the home. Given that the legal title to these possessions is not being challenged, their value is irrelevant to determining the amount in controversy. At most, Respondent would have to pay to store his things. However, this cost only affects Respondent and has no effect on Petitioners' economic situation. As the amount in controversy is based on the perspective of Petitioners, Respondent's potential storage costs are immaterial to this analysis.

The only relevant issue that needs to be considered in determining the amount in controversy is the value of the license itself. After careful consideration, the Court concludes that the license's value is *de minimus*. Respondent only held a license to occupy, as opposed to a lease. Thus, Petitioners had the right to end the license at will, and the length of time remaining on the license is legally non-existent. Given that licenses can be revoked at will, any money made by Respondent from leasing the property would be immaterial to determining the amount in controversy.

Respondent has challenged Petitioners' position by claiming he possesses an ownership interest in the property and assigned himself a license for life. However, other than this naked assertion, Respondent has failed to provide any evidence that establishes his counter narrative. As Respondent bears the burden of demonstrating that the amount in controversy exceeds the $75,000 threshold, this naked allegation is legally insufficient to satisfy the amount in controversy requirement.

### *2. Jurisdiction Over New York Eviction Actions*

Even if the amount in controversy was somehow satisfied, this Court would be unable to exercise jurisdiction over the claim. "[A]bsent express authorization by statute, federal courts cannot entertain summary proceedings." *United Mutual Houses, L.P. v. Andujar*, 230 F. Supp. 2d 349, 354 (S.D.N.Y. 2002). "[T]he requirements of the Federal Rules of Civil Procedure, which ordinarily do not allow proceedings more summary than the full court trial provided at common law, are inconsistent with the strict requirements of a statutory summary eviction proceeding in New York." *Wells Fargo Bank, N.A. v. Thomas*, No. 15 Civ. 928, 2015 WL 5319725, *2-*3 (S.D.N.Y. Sept. 11, 2015) (citing *Glen 6 Assocs., Inc. v. Dedj*, 770 F. Supp. 225, 227-28 (S.D.N.Y. 1991); *United Mutual Houses*, 230 F. Supp. 2d at 354). This procedural chasm has consistently led federal courts sitting in New York to remand summary eviction proceedings back to New York courts. *See id.* (citing cases).

Not only are the summary procedures inconsistent with the Federal Rules of Civil Procedure, but, as one court noted, "[i]f we accept removal of these cases to federal court, we will not only overburden the federal system but will also completely emasculate the state structure for dealing with such disputes. Principles of comity and federalism thus dictate that we abstain and

8

this matter is remanded to the state system to effectuate the abstention." *Glen 6 Assocs.*, 770 F. Supp. at 229.

**C.     Motion to Stay**

Respondent has filed a motion for the Court to stay judgment in this proceeding. He has argued that he would be able to establish jurisdiction if he were allowed to subpoena Doris Ray's medical and estate planning documents, Scott K. Ray's estate planning documents, and information possessed by the Herkimer County Department of Social Services. *See* Dkt. No. 24 at ¶ 4.

A party asserting jurisdiction is "permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). "But a district court does not abuse its discretion if it denies jurisdictional discovery where a plaintiff 'failed to show how the information [she] hoped to obtain from this discovery would bear on the critical issue' for jurisdiction." *Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (quoting *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004)).

Here, Respondent has failed to show how the information he hopes to obtain from discovery would be relevant to establishing subject matter jurisdiction. However, even if Respondent had articulated how he believed the information would be relevant to jurisdiction, the Court would still deny the motion to stay. As previously discussed, the Court cannot conceive of any additional facts that would aid Respondent's quest to satisfy the amount-in-controversy requirement. Regardless, even if such facts existed, Respondent would still face the intrinsic legal fact that this Court is not jurisdictionally competent to adjudicate a New York State eviction proceeding. Therefore, Respondent's motion to stay is denied.

**D.** **Sanctions**

Finally, Respondent requests that the Court sanction Petitioners' counsel for, in his opinion, falsely describing the 2016 protective order.

"The imposition of Rule 11 sanctions is discretionary and should be done with caution, *see Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), 'and all doubts should be resolved in favor of the signing attorney.'" *Bowman Import/Export, Ltd. v. F.J. Elsner & Co. N.A. Ltd.*, No. 02-civ-3436, 2003 WL 21543522, *1 (S.D.N.Y. July 9, 2003) (quoting *K.M.B. Warehouse Distrib., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995)).

The Court finds that there is little difference between stating that the temporary protective order expired and that it was dismissed for lack of prosecution. As the determination of sanctions is at the Court's discretion, the Court declines to issue sanctions against Petitioners' counsel.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioners' motion to remand (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall remand this case to Herkimer Town Court; and the Court further

**ORDERS** that the Clerk of the Court shall close this case upon transfer to Herkimer Town Court; and the Court further

**ORDERS** that Respondent's motions to stay ( Dkt. Nos. 24 and 33) are **DENIED**; and the Court further

**ORDERS** that Respondent's request for sanctions (Dkt. No. 28) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 2, 2018
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge